Martínez Torres, Juez Ponente
*933 TEXTO COMPLETO DE LA RESOLUCION

"La violencia doméstica, definida como el maltrato físico, emocional y sexual que ocurre en una relación de pareja, constituye uno de los problemas más graves y complejos que confronta la familia y la sociedad actual, tanto en Puerto Rico como en otros países del mundo. Un despertar de conciencia sobre el particular en las últimas décadas ha llevado a la aprobación de legislación específica y ala implantación de políticas públicas dirigidas a enfrentar el problema y sus múltiples consecuencias. Por lo que respecta a Puerto Rico, el 15 de agosto de 1989 nuestra Legislatura aprobó la Ley Núm. 54, conocida como Ley para la Prevención e Intervención con la Violencia Doméstica, [8 L.P.R.A. see. 601 y ss.,] en cuya exposición de motivos se afirma: "debemos dar énfasis a atender las dificultades que las situaciones de violencia doméstica presentan, particularmente a mujeres y menores, para preservar su integridad física y emocional, procurar su seguridad y salvar sus vidas".

Comisión Judicial Especial para Investigar el Discrimen por Género en los Tribunales de Puerto Rico, El discrimen por razón de género en los tribunales, Capítulo 7 - Violencia doméstica, San Juan, agosto 1995, pág. 317.
En el caso que ahora nos ocupa, esa política pública fue reafirmada mediante la imposición de responsabilidad civil por los daños resultantes del homicidio de una joven madre en un incidente de violencia doméstica en el que medió la indiferencia de los oficiales del orden público. Sin embargo, esa política pública choca con otra igualmente establecida por ley: la protección del erario público mediante la fijación de un límite a la cantidad por la que el Estado responde al indemnizar los daños causados por sus funcionarios. Concluimos, al igual que el foro de instancia, que a pesar de lo lamentable de la situación que dio origen a este caso, el ordenamiento jurídico resuelve este asunto en contra de los demandantes-peticionarios. El Estado sólo responde en este caso hasta el máximo de $150,000 que dispone la ley.
I. Hechos
La parte demandante, Felicita García y Arcadio Meléndez Rivera, por sí y en representación de sus hijas menores de edad, presentaron demanda por daños y perjuicios a raíz de la muerte de otra de sus hijas, Lourdes Meléndez García. En la demanda figuraban como co-demandados el policía Adrián Rivas Rodríguez, compañero consensual de Lourdes Meléndez; el Teniente Horwen Cepeda, el Sargento Félix Cancel y el Teniente Néstor Rodríguez, también policías. Los últimos tres fueron demandados tanto en su carácter oficial como en lo personal. El Estado asumió su representación legal. Artículo Núm. 12 de la Ley Núm. 104 de 29 de junio de 1955, según enmendada, conocida como la "Ley de Reclamaciones y Demandas contra el Estado", 32 L.P.R.A. see. 3085.
Una lectura de la sentencia enmendada que dictó el antiguo Tribunal Superior, Sala de Carolina, el 29 de junio de 1994 (Hon. C. Heydee Pagani Padró, Juez) nos muestra un cuadro que constituye una verdadera tragedia. Sólo relataremos aquí los incidentes que permiten comprender lo planteado en este recurso.
Lourdes Meléndez sufrió múltiples incidentes de agresiones físicas, insultos y acaloradas discusiones mientras convivió con el policía Adrián Rivas en el barrio Cubuy de Canóvanas. El 12 de *934 diciembre de 1988, una vecina de Lourdes decidió reportar una grave discusión entre ésta y su compañero, el policía Rivas. Cuando los policías se presentaron en la residencia de Rivas y Lourdes Meléndez, se limitaron a platicar con Rivas, su colega, obviando interrogar a la víctima e indagar si ella había sufrido algún daño corporal. Ese mismo día, Lourdes Meléndez acudió al cuartel de la Policía en Cubuy para querellarse de la agresión. El sargento de tumo, el co-demandado Félix Cancel, pudo observar los golpes en el rostro de la víctima así como su estado de embarazo. Sin embargo, incumplió su deber, ya que no le dio curso a la querella presentada por la víctima. De igual forma incumplió con su deber el teniente co-demandado Néstor Rodríguez, ya que por ser pariente de Rivas no atendió el caso con la seriedad que merecía. Cuando el tercer co-demandado, Teniente Horwen Cepeda, inquirió sobre la querella de Lourdes Meléndez contra el policía Rivas, fue informado que la misma se había paralizado, actuación con la que estuvo de acuerdo.
Seis días después de querellarse de Rivas, Lourdes había regresado a convivir con él, a pesar de las protestas de sus familiares. En la tarde del 21 de diciembre de 1988, la vecina de Lourdes escuchó una fuerte detonación y vio a Rivas salir de su casa junto a Lourdes y la hija de ésta en su primer matrimonio, Shirley Ann. Rivas cargaba en brazos a Lourdes y ésta con la blusa ensangrentada, lloraba y pedía angustiada que salvaran a su "bebé". Mientras todo esto acontecía, Shirley Ann, quien entonces tenía dos años y medio de edad, observaba la escena dantesca. Lourdes y su feto de cinco meses murieron como consecuencia de la herida de bala que le propiciara Adrián Rivas con su arma de reglamento, una Smith & Wesson, calibre 357. La autopsia reveló que el proyectil atravesó el cuerpo de Lourdes.
El antiguo Tribunal Superior determinó que la muerte de Lourdes Meléndez se debió tanto a la acción ilícita de Rivas al disparar su arma así como a las omisiones negligentes y descuidadas de los policías Cepeda, Rodríguez y Cancel en el cumplimiento de su deber, por las cuales responde el Estado Libre Asociado. El tribunal dictó sentencia en la que determinó que el Estado Libre Asociado y Adrián Rivas responden solidariamente del daño ocasionado, y los condenó al pago de seiscientos sesenta mil dólares ($660,000). La sentencia limitó la solidaridad del Estado al tope de responsabilidad dispuesto por ley ($150,000) y distribuyó esa cantidad a prorrata entre los demandantes. El tribunal no encontró responsables a los policías Cepeda, Rodríguez y Cancel en su carácter personal. 
Luego de advenir final y firme esa sentencia y que los demandantes trataran de cobrar extrajudicialmente la misma, acudieron al Tribunal de Primera Instancia, Sala Superior de Carolina, para que éste le ordenara al E.L.A. satisfacer la totalidad de la sentencia fundamentándose en la solidaridad impuesta. Mediante resolución de 28 de febrero de 1995, el foro de instancia declaró sin lugar dicha solicitud. Presentada a tiempo una moñón de reconsideración y acogida mediante orden de 23 de marzo de 1995, los demandados presentaron su réplica. Mediante resolución de 4 de mayo, notificada el 9 de mayo de 1995, el tribunal declaró sin lugar la moción de reconsideración. Inconformes, los demandantes acuden por recurso de certiorari a este Tribunal para plantear que como responsable solidario, el Estado tiene que satisfacer la totalidad de la sentencia en el caso de autos. No les asiste la razón en este planteamiento.
II. Responsabilidad del Estado
Los peticionarios fundamentan su petición en dos factores. Señalan en primer lugar que la responsabilidad que se le impuso en la sentencia a los co-causantes del daño fue solidaria y en segundo lugar, que el Artículo 12 de la Ley de Reclamaciones y Demandas contra el Estado, supra, según enmendada por la Ley Núm. 9 de 26 de noviembre de 1975, dispone que el Estado podrá hacerse responsable de la sentencia que en su día recaiga contra el funcionario cuya representación aceptó en determinado momento. 
El Artículo 2 de la Ley de Reclamaciones y Demandas contra el Estado, según enmendada, Id. see. 3077, dispone que una vez el tribunal determina que el funcionario demandado incurrió en responsabilidad "actuando en [su] capacidad oficial y dentro del marco de su función, cargo o empleo interviniendo culpa o negligencia....", el Estado responde por la omisión o negligencia del funcionario. 
*935 Esta sección también establece un límite a la responsabilidad del Estado de setenta y cinco mil (75,000) dólares cuando son daños causados a una solapersona y $150,000 cuando se causaren daños a más de una persona o cuando se indemnice a un perjudicado por varias causas de acción. Estos límites de $75,000 y $150,000 han sido evaluados partiendo del impacto económico que tienen en el fisco las reclamaciones contra el E.L.A., por lo que son totalmente razonables y no violan la garantía del debido proceso de ley sustantivo. No adolecen de vicio constitucional alguno. González Pérez v. E.L.A.,_D.P.R._(1995), 95 J.T.S. 52 pág. 841; Defendini v. E.L.A.,_D.P.R._(1993), 93 J.T.S. 119, pág. 11011.
En el caso de autos el Estado ya había asumido la representación legal de los policías co-demandados y es por esa razón que los demandantes-peticionarios entienden que es el Estado el que debe satisfacer la sentencia. Es correcto el señalamiento de los peticionarios en cuanto a que cuando el Estado responde por una sentencia emitida contra un funcionario en su carácter personal a quien el Estado decidió darle representación bajo el Artículo 12 de la Ley de Reclamaciones y Demandas contra el Estado, supra, no aplican los topes establecidos en dicha Ley. Op. Sec. Just. Núm. 9 de 1985.
Ahora bien, debemos mantener presente que la aplicación de este precepto legal depende de que el funcionario, ex-funcionario, empleado o ex-empleado haya sido demandado en daños y perjuicios en su carácter personal y que la sentencia que recaiga en su contra haya sido también en esa misma capacidad personal. En esa situación, como el responsable es el funcionario y no el Estado, no aplican los límites de responsabilidad del Estado establecidos por ley. Al dar representación al funcionario demandado en su carácter personal, el Estado está impedido de invocar su inmunidad cuando se le impone responsabilidad al funcionario en esa misma capacidad.
Este factor hace inaplicable al caso de autos el planteamiento bajo el Artículo 12 de la Ley de Reclamaciones y Demandas contra el Estado, supra. La sentencia del antiguo Tribunal Superior, Sala de Carolina, adjudicó responsabilidad al Estado por las actuaciones negligentes de los policías en el cumplimiento de su deber. No adjudicó responsabilidad a los tres policías co-demandados en su carácter personal por lo que no es de aplicación la norma de responsabilidad ilimitada del Estado, contemplada en el Artículo 12, Id.. En su lugar, responde el Estado bajo el Artículo 2, supra, sujeto a los topes allí establecidos.
De acuerdo con lo anterior, es correcta la determinación del foro recurrido en cuanto a que la responsabilidad del Estado está limitada por el Artículo 2 de la Ley de Reclamaciones y Demandas contra el Estado, Id.. Debido a que concurren varias reclamaciones, el límite correspondiente es de ■ ciento cincuenta mil dólares ($150,000), cantidad máxima que tendría que pagar el Estado Libre Asociado. ¡
III. Solidaridad
En cuanto al planteamiento de la solidaridad, debemos reafirmar lo que expresara nuestro más alto foro en relación a casos como éste:
"[RJesulta improcedente a la luz de las disposiciones pertinentes de la Ley Núm. 104 supra, imponerl[e] al Estado Libre Asociado de Puerto Rico la obligación solidaria de pagar una cantidad en exceso del máximo autorizado por dicha Ley, independientemente de que el Estado tenga o no disponible el derecho a entablar una acción de nivelación por daños solidarios contra cualquier otro co-causante de éstos.... "
González Pérez v. E.L.A., supra, pág. 842 (Enfasis en el original.).
También señaló el Tribunal Supremo en esa opinión que existen casos en que al Estado le está vedado nivelar contra el co-causante del daño. Uno de esos casos es el de autos, en el cual se ha impuesto responsabilidad al Estado por actuaciones negligentes de sus agentes o empleados como parte del descargo de sus funciones. No existe disposición alguna en la ley que impida imponer responsabilidad solidaria al Estado hasta el máximo de $150,000. En este caso el Estado responde solidariamente hasta la cantidad de $150,000 y no por la totalidad de la indemnización concedida, *936 según dispuso el Tribunal de Primera Instancia en su sentencia y según lo reafirmó en su resolución de 28 de febrero de 1995.
Por todo lo expuesto, el Tribunal declara no ha lugar la solicitud de certiorari presentada por los demandantes.
Lo acordó y ordena el Tribunal y lo certifica la Secretaria General.
María de la C. González Cruz Secretaria General
ESCOLIOS 95 DTA 237
1. El policía Adrián Rivas se declaró culpable de homicidio el 18 de enero de 1990. Como resultado de una alegación preacordada, el antiguo Tribunal Superior (Hon. Amílcar Velázquez Nazario, Juez) lo sentenció a seis años de cárcel y le concedió el beneficio de una sentencia suspendida. Por otro lado, el 19 de junio de 1991, ya instado el pleito pero antes que recayera sentencia, el co-demandante Arcadio Meléndez García, padre de Lourdes, se suicidó. Conviene señalar además que por los mismos hechos que dieron lugar a este pleito, los demandantes habían presentado una demanda en el Tribunal Federal para el Distrito de Puerto Rico por violación de derechos civiles. Según se relata en la sentencia del antiguo Tribunal Superior, Sala de Carolina, el tribunal federal (Hon. Juan M. Pérez Giménez, Juez) desestimó la demanda el 14 de agosto de 1991 por falta de una actuación so color de autoridad. A su juicio, "no existía un deber de proteger a Lourdes Meléndez García de los actos violentos de Rivas, quien en ese momento era un actor privado." (Traducción nuestra.)
2. El Artículo 12 de la Ley de Reclamaciones y Demandas contra el Estado, según enmendado, supra, dispone en lo pertinente:

"Todo funcionario, ex-funcionario, empleado o ex-empleado del Estado Libre Asociado de Puerto Rico que sea demandado en daños y perjuicios en su carácter personal, cuando la causa de acción se base en alegadas violaciones a los derechos civiles del demandante, debido a actos u omisiones incurridos de buena fe, en el curso de su trabajo y dentro del marco de sus funciones, podrá solicitar que el Estado Libre Asociado le provea representación legal y posteriormente asuma el pago de cualquier sentencia que pueda recaer sobre su persona...."

3. El Artículo 2, supra, reza así en lo pertinente:
"Se autoriza demandar al Estado Libre Asociado de Puerto Rico ante el Tribunal de Primera Instancia de Puerto Rico por las siguientes causas: (a) Acciones por daños y perjuicios a la persona o ala propiedad hasta la suma de setenta y cinco mil (75,000) dólares causados por acción u omisión de cualquier funcionario, agente o empleado del Estado, o cualquier otra persona actuando en capacidad oficial y dentro del marco de su función, cargo o empleo interviniendo culpa o negligencia. Cuando por tal acción u omisión se causaren daños y perjuicios a más de una persona, o cuando sean varias las causas de acción a que tenga derecho un sólo perjudicado, la indemnización por todos los daños y perjuicios que causare dicha acción u omisión no podrá exceder de la suma de ciento cincuenta mil (150,000) dólares. Si de las conclusiones del tribunal surgiera que la suma de los daños causados a cada una de las personas excede de ciento cincuenta mil (150,000) dólares, el tribunal procederá a distribuir dicha suma entre los demandantes, a prorrata, tomando como base los daños sufridos por cada uno...."